February 6, 2017

Via Email

Theresa Kleinhaus
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607

Re: *Burgess v. Baltimore Police Department, et al.*

Dear Ms. Kleinhaus:

We have received your letter expressing concerns with the BPD's answers to interrogatories. As explained below, BPD's answers are within the acceptable realm of Rule 26, *i.e.*, nothing within the specific text of Rule 26, nor the case law interpreting the Rule requires different answers to Plaintiff's First set of Interrogatories.

1. Interrogatory 4

As to interrogatory 4 from the first set of interrogatories, you state that you "*believe*[] additional communications must have occurred" beyond those identified by the BPD (emphasis added). The interrogatory requests information about communications between the BPD (and its agents) and various groups. I will clarify the BPD's answer as to each group individually:

a. The individual defendants

Whether the individual defendants have spoken with anyone from the BPD is information that they would individually presumably have, if they remembered. As explained in BPD's responses to interrogatories, it is the position of the BPD that it would be inappropriate, abusive, and duplicative to require it to interrogate the other named defendants and then produce written interrogatory answers summarizing those conversations. Federal Rule of Civil Procedure 26(b)(2)(C)(i) is clear that the Court is authorized to limit discovery (even relevant discovery) if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.Proc. 26(b)(2)(C)(i) (2017)).

EXHIBIT 6

The other defendants are all parties subject to discovery. To the extent that Plaintiff persists in seeking to compel the BPD to engage in fruitless and duplicative discovery interrogating the individual defendants via counsel and summarizing their statements, the BPD will have no choice but to seek a protective order from the court.

Additionally, the many documents that have been produced by the BPD thus far contain reference to or suggest at a variety of communications. Those documents speak for themselves and the BPD refers Plaintiff to those documents. *See Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 75 (D. Conn. 2010)(Court quashes topic for Rule 30(b)(6) corporate deposition  under Rule 26(b)(2)(C)(i) on grounds that "information sought in [the topic] is unreasonably cumulative or duplicative and has already been obtained from some other source that is more convenient and less burdensome", where corporation had already responded to requests for production of documents and produced documents relevant to the topic) .

Beyond this, the BPD has been unable to locate anyone else with any knowledge of communications with the individual defendants.

  b.  Other law enforcement agencies

The homicide file, as produced, contains records relating to a meeting between BPD detectives and Charles Dorsey in September 1999 (see BPD.002414 *et seq*). *See Dongguk Univ. v. Yale Univ.*, 270 F.R.D. at  75. Although the meeting in question presumably took place in a correctional facility, the BPD is not in possession of any information about communications between the BPD detectives and the facility itself.

The BPD has not otherwise been able to locate any documents or any witnesses with knowledge that suggests that any other law enforcement agencies communicated with BPD agents regarding Plaintiff or the allegations in this case.

  c.  Persons in the Office of the State's Attorney for Baltimore City

Other than the individual defendants and the other witnesses at trial, who presumably communicated with persons from the Office of the State's Attorney for Baltimore City as part of the Plaintiff's criminal trial (as described and referenced variously in the depositions already taken in this

case and the documents produced by both parties), the BPD has been unable to locate any other information about communications between BPD agents and the state's attorney's office regarding Plaintiff or this case. There do not appear to be any records of this or any witnesses who remember it.

    d.  The United States' Attorney's office

The BPD has been unable to locate any records that suggest that any BPD agent communicated with any federal prosecutors regarding Plaintiff or the facts alleged in the complaint. Neither has the BPD been able to locate any witnesses with any knowledge of such communications.

    e.  The steps BPD took to answer this interrogatory

As to this interrogatory and others, you also ask that the BPD "identify and explain every step [it] took to answer this interrogatory." All investigation into this case has been undertaken by BPD's attorneys. No other BPD employees or agents conducted any investigation. The "steps taken" as part of any investigation, which necessarily reveal both facts as well as attorney mental impressions, are therefore, protected work product and may in some cases be protected attorney client privilege. Such material is not generally discoverable. *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996). The BPD will not produce such material or otherwise answer about its attorneys' investigations.

    2.  Interrogatory 6

As to interrogatory 6, concerning the question of the BPD's position as to Plaintiff's guilt or innocence, the BPD continues to believe that any answer to this question is irrelevant and not discoverable. Although you state that the parties will presumably argue Plaintiff's guilt at trial, this case is bifurcated, and the BPD is not going to be participating in the first trial or making any arguments. Whether the question might have some relevance in a *Monell* trial against the BPD itself is outside the scope of this first stage of the bifurcation, and such discovery is therefore subject to the stay.

    3.  The BPD's lack of knowledge

As to your concerns regarding the BPD's stated lack of knowledge regarding several interrogatories, the BPD has been unable to locate any individuals or documents that would allow it to answer the questions at issue. While I

understand your concern with the language, the answers remain that the BPD has no knowledge, personal or otherwise.

You identify six interrogatories where you are concerned:

    a.  Interrogatory number 7 from Plaintiff's first set and interrogatories number 2-4 from Plaintiff's second set

Briefly summarized, Interrogatory 7 asks whether any agent of the BPD withheld exculpatory evidence from Plaintiff prior to the conclusion of his post-conviction proceedings on February 21, 2014.

The BPD's answer is that it has no knowledge that any BPD officer or agent withheld potentially exculpatory material from the prosecutor's office. The BPD has been unable to locate any individuals with knowledge of such a transaction or lack thereof. Neither do the documents thus far produced establish any nondisclosure.

This answer also applies to your concerns with BPD's responses to Interrogatories number 2, 3, and 4 from Plaintiff's second set, seeking information about disclosures to the prosecution.

    b.  Interrogatory number 1 from Plaintiff's second set

Briefly summarized, interrogatory 1 from Plaintiff's second set of interrogatories asks about the chronology of documents being placed into the Dyson homicide file. The BPD has been unable to obtain a clear answer on this. The only thing the BPD can say is that the homicide file contains (at page BPD.2683) a case review sheet indicating that as of certain dates in 1994 the different sections of the case file had been completed. That record does not specify what documents were actually contained in those sections or when individual documents were added, however.

The BPD has been unable to locate anyone with any knowledge about when specific documents were placed into the Dyson homicide file, nor has any record been located describing when documents were placed into the file.

    c.  Interrogatory number 1 from Plaintiff's third set

Briefly summarized, interrogatory 1 from Plaintiff's third set asks whether any employee of the BPD spoke with any child of Michelle Dyson following the murder of Michelle Dyson. The BPD has produced and directed Plaintiff to all records it can locate concerning any possible interaction between the

children of Michelle Dyson and the BPD. Those records speak for themselves. The BPD has been unable to locate any other documents or any witnesses with knowledge of any communications.

4. Conclusion

I hope that this letter resolves your concerns.


All the best,


Colin Glynn
Assistant Solicitor
Baltimore City Department of Law
100 N. Holliday St.
Baltimore, MD 21202


Cc: Counsel of record for the individual defendants