## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

SABEIN BURGESS,                    *

      Plaintiff,                    *

v.                                 *          Civil Action No.: RDB-15-0834

BALTIMORE                          *
POLICE DEPARTMENT *et al.*,
                                                      *

      Defendants.                   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF DR. SIDNEY BINKS (DCKT. NO. 209)

Now comes Plaintiff, Sabein Burgess, by and through his counsel, Loevy & Loevy, and respectfully submits the following response in opposition to Defendants' Motion *In Limine* to Exclude Testimony of Dr. Sidney Binks. In support thereof, Plaintiff states as follows:

### Introduction

Defendants seek to exclude testimony from Plaintiff's psychological expert, Dr. Sidney Binks, who has opined on the impact that Plaintiff's nearly twenty years of wrongful imprisonment had on his emotional life and psychological health. Defendants oppose Dr. Binks's proposed testimony for lack of reliability because of failure to conduct pre-incarceration psychological and emotional testing and also for lack of relevance. Defendants are wrong on both accounts, and utterly fail to demonstrate why this Court should exclude evidence that is routinely allowed in civil cases to assist the trier of fact in awarding compensatory damages. Defendants' motion *in limine* to exclude Dr. Binks's testimony should be denied.

**Argument**

**A.  Dr. Binks's expertise and his proffered opinions and their bases**

For starters, Dr. Binks's qualifications are set out in a CV attached to his report, *see* Ex. 1, Dr. Binks Report at 11-19, and there can be no question but that Dr. Binks is amply qualified to opine on the subject at issue. A licensed clinical psychologist, Dr. Binks is board certified in clinical neuropsychology and practices at George Washington University Hospital, Clifton T. Perkins Hospital and St. Elizabeth's Hospital. He is also a professor of psychology at George Washington University and Howard University. His educational background includes a Bachelor of Arts degree, a Master's degree, and a Ph.D. in psychology. His 30 years of practice and academic research largely focus on psychological and neuropsychological assessments in hospitals and prisons. Dr. Binks has been employed as a consultant to conduct psychological evaluations of inner-city adolescent and young males of color as well as prisoners. Dr. Binks has been qualified an expert—largely to conduct civil forensic evaluations—in state and federal courts on multiple occasions.

Nor have Defendants identified any genuine problems with Dr. Binks' methodology. His opinions are based on his usual protocols in such matters, including a 6-hour interview and multiple testing of the psychological and emotional functioning of Plaintiff; hours-long interviews of Plaintiff's daughter, who was born while Plaintiff was incarcerated, and his longtime girlfriend, whom he has been in a relationship with before, during, and after incarceration; and review of voluminous records in this case including depositions and Plaintiff's prison records. In his report, Dr. Binks opines that Plaintiff's tendency toward introversion and difficulty communicating verbally or emotionally in his youth and young adulthood contributed to his inability to cope with being wrongfully incarcerated. Ex. 1, Dr. Binks Report at 8. As a

result, the damage of nearly twenty years' imprisonment done to Plaintiff has been substantial.

Dr. Binks opines, "it is difficult to imagine a more emotionally devastating and traumatic life

experience" than Plaintiff's wrongful conviction. *Id.* "Unfortunately, this devastation did not end

with simply the loss of time and all that this entails (loss of freedom, love relationships,

fatherhood, and vocational opportunity), it had a much darker and even more severe emotional

impact. As Burgess sat in prison, he grew increasingly more withdrawn, introverted, suspicious

and even paranoid." *Id.* According to Dr. Binks, "[h]erein lays the profound ramifications of his

incarceration. Today, three years after his release he remains practically home bound." *Id.*

### B. Dr. Binks's expert damages testimony is of the kind routinely offered in civil cases.

Wrongfully convicted individuals who spend multiple decades in prison for crimes they

did not commit suffer profound and often complex psychological injuries as a result, rending this

a subject on which expert testimony can assist the trier of fact. Indeed, expert testimony

regarding psychological damages has been standard fare in this Circuit. *See, e.g., Guerrero v.*

*Deane*, No. 1:09CV1313 JCC/TCB, 2012 WL 3834907, at *5 (E.D. Va. Sept. 4, 2012) (denying

motion to exclude expert testimony as to damages because doing so would "deny Plaintiffs the

very remedy that they seek through bringing a § 1983 claim"); *Kristensen ex rel. Kristensen v.*

*Spotnitz*, No. 3:09-CV-00084, 2011 WL 4380893, at *14 (W.D. Va. Sept. 21, 2011) (admitting

clinical psychologist's expert testimony because it would help the trier of fact determine whether

Plaintiffs suffered emotional damages).

Defendants do not cite any cases to the contrary. This is because the general presumption

is that expert testimony regarding psychological damages is admissible and can assist the trier of

fact. *See, e.g.*, *Gell v. Town of Aulander*, No. 2:05-CV-21-FL, 2008 WL 5545036, at *14

(E.D.N.C. Dec. 1, 2008), *report and recommendation adopted in part*, No. 2:05-CV-00021-FL,

2009 WL 166379 (E.D.N.C. Jan. 22, 2009) (holding that because the effects of incarceration is not a subject "within the everyday knowledge or experience of an average juror," that Plaintiff's psychological damages expert "contains specialized knowledge that the jury would find helpful in evaluating what, if any, harm [Plaintiff] suffered from his imprisonment").

### C.  Dr. Binks's expert testimony is reliable.

"'[T]he test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson,* 484 F.3d 267, 274 (4th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999)). One factor pertinent to reliability is the proposed expert's qualifications. *See Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003).

Defendants do not contest Dr. Binks's qualifications to serve as an expert in this case. Instead, Defendants' purport to challenge to the reliability of Dr. Binks's opinions is based on his methodology, but really they offer nothing but points for possible cross-examination. Specifically, Defendants object that Dr. Binks failed to include testing data regarding Plaintiff's pre-incarceration psychological and emotional state and argue that Dr. Binks cannot measure how Plaintiff's incarceration changed his emotional functioning. While hardly conceding that such data would be required for Dr. Binks to have anything relevant or admissible to say at trial, the fact is that Dr. Binks did obtain data on Plaintiff's emotional functioning before he was incarcerated. *See* Ex. 1, Dr. Binks Report at 1-2 (sections on "Developmental History & Family Relationships," "Educational History," "Work/Financial History," "Medical History" and "Psychiatric History"). Defendants may quibble with the sufficiency of that data, but that of course is what cross-examination is for.

Nor can there be any question that Dr. Binks has the qualifications—again, not challenged by Defendants—to make a judgment as to the extent of the investigation needed of Plaintiff before he was incarcerated to develop the opinions he offered. And, there is no requirement that Dr. Binks needed to obtain testing data specifically of Plaintiff before he was incarcerated; it is entirely proper for Dr. Binks to have relied on Plaintiff and his family member's statements for Plaintiff's pre-incarceration history. *See e.g.*, *Marquez v. Martinez*, No. CIV 11-838 JAP/KBM, 2015 WL 5090467, at *24 (D.N.M. May 1, 2015) (rejecting argument that psychologist could not rely on statements from Plaintiff and mother about his history and suffering in opining on Plaintiff's damages).

At bottom, Defendants have not shown that the methodology used by Dr. Binks is so substantially deficient that it renders his opinions inadmissible for lack of reliability. Rather, Defendants' objections ultimately go to the weight due his opinions, not their admissibility. Expert testimony need not be "irrefutable or certainly correct" to be sufficiently reliable to be admitted. *Nucor Corp. v. Bell*, 2008 WL 4442571, at *9 (D.S.C. 11 Jan. 2008) (finding that "[a]lthough defendants make valid points that speak to the weight the finder-of-fact may give [the proposed expert's] testimony, their criticism does not demonstrate that all of his testimony is so unreliable that it should be excluded"); *see also Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261; *PBM Products, LLC v. Mead Johnson Nutrition Co.,* No. 3:09–CV–269, 2010 WL 56072, at *8 (E.D. Va. 4 Jan. 2010) (rejecting motion to exclude expert where arguments primarily attacked conclusions reached, not methods used). Defendants' criticisms can appropriately be advanced through cross-examination of Dr. Binks and presentation of contrary evidence.

Were there any doubt, Plaintiff notes that the Defendants' themselves disclosed a rebuttal expert, Dr. Vincent Culotta, who they apparently deemed capable of rendering expert opinions on the same subject. The reason for that is because this is a subject for which expert testimony is appropriate, and there is amply sufficient data for both sides' experts to render opinions.

### D. Dr. Binks's expert testimony is outside the ken of a lay juror and is not cumulative of other evidence.

Defendants argue that Dr. Binks's conclusions add nothing to what the jury could determine on its own. Nothing could be further from the truth. Courts have held that the fact that prison is unpleasant and can cause psychological problems as a general matter may be something within the everyday knowledge of the average juror, but Dr. Binks's opinion goes well beyond such a general understanding of the effects of incarceration. His opinion contains a detailed assessment of the psychological effects of incarceration on Plaintiff resulting from his wrongful arrest in 1994 and his conviction and life sentence in 1995, through the time of his release in 2014. This assessment includes an explanation of the seriousness and lasting psychological effects of a long period of confinement on someone like Plaintiff, who was imprisoned when innocent, and who was exonerated and released to free society after nearly 20 years' incarceration.

Further, Dr. Binks identifies how certain specific characteristics of Plaintiff—including his below average language skills and history of special education, difficulty communicating his feelings and emotional life, and significant persecutory ideation—exacerbated the harmful psychological effects of imprisonment for Plaintiff. These subjects addressed by Dr. Binks are not within the everyday knowledge or experience of an average juror. Accordingly, Dr. Binks's opinion contains specialized knowledge that the jury will find helpful in evaluating what harm Plaintiff suffered from his imprisonment. *See, e.g.*, Ex. 2, Dr. Binks Deposition at 91-92

(explaining that Plaintiff's denial of "psychiatric symptomology" means that he "wants to make a good impression" and does not "acknowledge having any minor social faults that most people would easily acknowledge."); *id.* at 113 (defining Plaintiff's "persecutory ideation" as Plaintiff being "very suspicious and untrusting of others and feels that…the world is not a safe place"). Dr. Binks is one among dozens of experts across the country who provide this sort of testimony in wrongful conviction cases, and this expertise is undoubtedly useful for helping the jury to understand the psychology at issue.

Defendants further argue that Dr. Binks's testimony is cumulative in light of the ability of Plaintiff and his family members to testify based on firsthand knowledge of Plaintiff's condition during and after his imprisonment. Again, Defendants miss the mark. Dr. Binks's opinions do not merely echo testimony from Plaintiff and Plaintiff's family members. Instead, his report describes specific psychological conditions based on his specialized knowledge and expertise in neuropsychology and forensic psychology. Dr. Binks's expertise with regard to assessing psychological and emotional functioning is particularly helpful in this case where Plaintiff's tests results show he cannot express his inner emotional world and has below average language skills. Where Plaintiff cannot articulate the damage done to him due to his incarceration, the jury would benefit from having a licensed clinical psychologist explain that damage, in layman's terms, and use it to analyze firsthand testimony regarding Plaintiff. Courts routinely allow, in addition to lay testimony from witnesses, expert testimony from psychologists with respect to damages. *See e.g.*, *United States v. Cooke*, No. 5:09-HC-2034-FL, 2011 WL 3490104, at *3 (E.D.N.C. Aug. 10, 2011); *Gell*, 2008 WL 5545036, at *15.

**Conclusion**

As in any civil case, Plaintiff is entitled to introduce damages evidence. Plaintiff will be asking the jury for a substantial sum of compensatory damages, and must demonstrate the distress caused him by being charged with the murder of someone he loved and the pain and suffering caused by the experience of being wrongfully imprisoned for nearly 20 years. There can be no dispute that Dr. Binks is qualified to testify about his opinions on Plaintiff's emotional distress, pain, and suffering and that such expert testimony is regularly admitted in civil cases to prove damages. Defendants have identified nothing but subjects for cross-examination, and have thus fallen well short of justifying an order excluding Dr. Binks's well-formed opinions.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion *in limine* to exclude the testimony of Dr. Binks.

RESPECTFULLY SUBMITTED,

/s/Jon Loevy

Jon Loevy
Gayle Horn
Steve Art
Theresa Kleinhaus
Tony Balkissoon
LOEVY & LOEVY
311 North Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (tel.)
(312) 243-5902 (fax)

*Attorneys for Plaintiff*

8

## <u>CERTIFICATE OF SERVICE</u>

I, Jon Loevy, an attorney, hereby certify that on October 27, 2017, I filed the foregoing Response using the Court's CM/ECF system, which effected service on all counsel of record.

RESPECTFULLY SUBMITTED,
/s/ Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 (tel.)
(312) 243-5902 (fax)
*One of Plaintiff's Attorneys*