## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SABEIN BURGESS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:15-cv-00834-RDB |
| | ) | |
| v. | ) | |
| | ) | Hon. Richard D. Bennett, |
| BALTIMORE POLICE DEPARTMENT, *et al.*, | ) | District Judge |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS</u>

Jon Loevy, admitted *pro hac vice*
Gayle Horn, Bar No. 7182
Steve Art, admitted *pro hac vice*
Theresa Kleinhaus, admitted *pro hac vice*
LOEVY & LOEVY
311 North Aberdeen Chicago,
Illinois 60607
(312) 243-5900

*Attorneys for Plaintiff Sabein Burgess*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

DISCUSSION ..............................................................................................................................2

I.  PLAINTIFF'S ATTORNEYS' HOURLY RATES ARE REASONABLE ................2

    A.  The Hensley Factors Support Plaintiff's Attorneys' Proposed Rates......................4

    B.  Hourly Rates Awarded In the Community Support the Proposed Rates .................6

    C.  The Rates Sought By Plaintiff's Counsel Are Reasonable and Justified................8

        1.  Jon Loevy....................................................................................................8

        2.  Arthur Loevy..............................................................................................15

        3.  Gayle Horn.................................................................................................16

        4.  Steve Art ....................................................................................................18

        5.  Teresa Kleinhaus........................................................................................21

        6.  Danielle Hamilton......................................................................................23

        7.  Tony Balkissoon ........................................................................................24

        8.  Sarah Grusin...............................................................................................25

        9.  Loevy & Loevy Paralegals.........................................................................26

    D.  The Rates Awarded Must Reflect Market Increases In Legal Fees and The Time
        Value of Money ...................................................................................................26

II.  THE HOURS BILLED ON THIS LITIGATION WERE REASONABLE................27

III.  AN UPWARD DEPARTURE FROM THE LODESTAR IS WARRANTED IN THIS
      CASE ....................................................................................................................28

IV.  PLAINTIFF'S COUNSELS' COSTS ARE REASONABLE ....................................29

CONCLUSION...........................................................................................................................29

## INTRODUCTION

After six years of litigation, there can be no dispute that Plaintiff's counsel obtained an exceptional result for their client. The end result, a $15 million jury verdict—among the largest civil rights verdicts in the history of the District—speaks for itself.

Mr. Burgess achieved this remarkable outcome in no small part because of the skill, expertise, and dogged dedication of his attorneys. Constitutional cases involving wrongful convictions caused by state actors who fabricate and suppress evidence are a highly specialized area of federal practice. Few law firms are as experienced and dedicated to this practice as undersigned Petitioners. Nor was this an easy case. Without any direct evidence of misconduct, Plaintiff's counsel were forced to build the case circumstantially through time-consuming work, including numerous waves of written discovery, nearly 50 depositions, expert discovery, and sifting through literally tens of thousands of documents. Plaintiff finally won an unequivocal victory, but only after extensive summary judgment briefing, a lengthy trial on the merits, and then two successful Fourth Circuit appeals.

Moreover, the case was hard and very risky from an *ex ante* perspective. Defendants retained very skilled and expensive outside counsel, who devoted extensive resources to trying to defeat the claims. And unlike Defendants' counsel, who are paid regardless of the outcome, Plaintiff's counsel undertook this commitment notwithstanding the very real possibility of receiving literally nothing for all of their labor and investment had summary judgment been granted, or if the jury had gone the other way.

Additionally, for most of this case's history, the Defendants declined all of Plaintiff's overtures to try to resolve the dispute before legal fees accumulated further. Defendants' decision to litigate without seriously considering the possibility of settlement resulted in a prodigious number of

billable hours. Having forced Mr. Burgess to accomplish his goals the hard way, Defendants are hardly in a position to deny that Plaintiff's counsel is entitled to fair compensation. Having obtained great success in this litigation, Plaintiff's counsels' proposed lodestar is the minimum measure of appropriate attorneys' fees, and an upward departure is warranted under the applicable case law. The petition should be approved.

**DISCUSSION**

The Fourth Circuit utilizes a lodestar analysis to calculate the appropriate award of attorneys' fees. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). To arrive at the lodestar, the court multiplies the "reasonable hourly rate" by a "reasonable number of hours expended." *Id.* Under familiar principles, that lodestar amount is the presumptively appropriate measure of the fee award and should only be disturbed in rare circumstances. *Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *see also McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013). Indeed, the Supreme Court has stated that when litigation of a section 1983 cases leads to "excellent results," the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id.* In this case, Plaintiff's lodestar is amply justified, and the costs expended were reasonable and appropriate for the result achieved.

## I.     PLAINTIFF'S ATTORNEYS' HOURLY RATES ARE REASONABLE

A reasonable hourly rate is the rate that lawyers of similar ability and experience in the community charge for their work. *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659-60 (7th Cir. 2007); *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994);

2

*Courthouse News Serv. V. Schaefer*, 484 F. Supp. 3d 273, 277-28 (E.D. Va. 2020). The burden of proving the market rate is on Plaintiff, but "once an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux*, 491 F.3d at 659-60. Plaintiff's position is that Plaintiff's attorneys should be awarded the following hours hourly rates:

| Attorney | Law School Graduation | Hours | Rate | Total |
|---|---|---|---|---|
| Arthur Loevy | 1964 | 43.5 | $850 | $36,975 |
| Jon Loevy | 1993 | 1284 | $750 | $963,000 |
| Gayle Horn | 2004 | 1474 | $575 | $847,550 |
| Steve Art | 2009 | 911.45 | $525 | $478,511.25 |
| Theresa Kleinhaus | 2010 | 798.9 | $500 | $399,450 |
| Tony Balkissoon | 2010 | 813.2 | $500 | $406,600 |
| Danielle Hamilton | 2012 | 105.5 | $450 | $47,475 |
| Sarah Grusin | 2014 | 179 | $410 | $73,390 |
| Paralegal hours | | 592.6 | $150 | $88,890 |
| Mort Smith – investigator | 30+ years experience | 268.5 | $160 | $42,960 |
| TOTAL FEES | | | | $3,384,801.25 |

3

### A.      The Hensley Factors Support Plaintiff's Attorneys' Proposed Rates

The Supreme Court in *Hensley* instructed lower courts to consider various factors in deciding the reasonableness of rates, all of which favor Plaintiff's counsel's request here. 461 U.S. at 430 n.3. In this case, the *Hensley* factors demonstrate ample support for Plaintiff's attorneys' hourly rates.

By far "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley*); *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998) (same). By any measure, Plaintiff's counsel achieved an extraordinary result in this case. Success in a Section 1983 wrongful conviction case is extremely difficult, and Plaintiff is not aware of any comparable verdict in this district of this magnitude. Plaintiff's verdict in this case reflects a degree of success that is not open to dispute.

With respect to *Hensley*'s reference to "the experience, reputation, and ability of the attorneys," Plaintiff's attorneys respectfully submit that their credentials are on par with attorneys practicing anywhere. See Exs. A-H. If they worked at large, commercial firms, Plaintiff's lawyers would command top-tier market rates easily exceeding the rates requested in this petition. Though Plaintiff's attorneys took a different path than their peers at those firms, pursuing careers in civil rights litigation, they strive to provide their clients with the same premium legal services enjoyed by the clients of the world's most prestigious firms. *See Riverside v. Rivera*, 447 U.S. 561, 578 (1986) (section 1988 is designed "to encourage the bringing of meritorious claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel").

Moreover, few civil rights firms in the country match Loevy & Loevy's experience and expertise litigating section 1983 cases, and wrongful conviction cases in particular. The qualifications of each of Plaintiff's attorneys are discussed below, but this Hensley factor, too, supports the proposed hourly rates.

Finally, each of the other *Hensley* factors also favor the rate requests, including the following:

- The time and labor required: The case involved six years of litigation and thousands of hours of time.

- The novelty and difficulty of the questions: This case involved complex civil rights issues. As Defendants argued strenuously at summary judgment, post-trial, and on appeal, there was no overwhelming evidence of a constitutional violation.

- "The preclusion of employment by the attorney due to acceptance of the case": The level of commitment demonstrated by taking a risky case to trial and then through two appeals amounted to considerable opportunity costs.

- The "undesirability" of the case: Given the lack of a clear path to victory, there was no line of attorneys interested in a case such as this one. Plaintiff's counsel made the commitment and delivered a resounding victory.

- The skill requisite to perform the legal service properly: This *Court* had a front-row view to the trial, and the skill demonstrated by trial counsel. Similarly, this Court understood the complexity of the issues involved in both of the appeals and the quality of the counsel litigating those appeals for the Defendants, and so it has a front-row view of the skill demonstrated by Plaintiff's counsel on appeal as well.

5

*Hensley,* 461 U.S. at n. 3.

    **B.**    **Hourly Rates Awarded In the Community Support the Proposed Rates**

    Plaintiffs' attorneys' proposed rates are also justified by reference to fees awarded in other cases to attorneys in the community. *See Courthouse News Serv.*, 484 F. Supp. 3d at 277-78. Attorneys in this and comparable jurisdictions have sought and have been awarded hourly rates that exceed or are in line with Plaintiffs' proposed hourly rates.

    Notably, and as set forth in local attorney Andrew Freeman's attached declaration, judges and arbitrators in Maryland have routinely approved comparable rates for attorneys employed by Brown, Goldstein & Levy (BGL) in civil rights matters. For example, in *Rivera v. Mo's Fisherman Exchange, Inc.,* Case No. ELH-15-1427 (D. Md. Oct. 11, 2018), ECF Nos. 169-3, 170, the Court approved a settlement in Fair Labor Standards Act collective action where BGL petitioned for attorneys' fees at its customary 2018 hourly rates, including $595 per hour for partner time, $300 per hour for a third-year associate, and $195 per hour for paralegal time. Similarly, following contested fee petition briefing in an arbitration proceeding in 2020, the Honorable James R. Eyler (Ret.) awarded attorneys' fees at BGL's regular market rates of $625 per hour for partner Andrew D. Levy (a 1982 law school graduate), $330 per hour (BGL's 2019 rate for a fourth-year associate), and $190 to $225 per hour for law clerk and paralegal time, finding that those rates were within Baltimore's market rates. Ex. I (Freeman Dec. ¶ 12).

    Under well-settled law, affidavits from local attorneys like Mr. Freeman are sufficient for Plaintiff's counsel to meet their burden here. *Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990) (affidavits from litigation counsel regarding their skills and experience as well as other local counsel attesting to local rates were sufficient to demonstrate reasonableness of requested rates);

*Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) ("The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market.").[1]

In jurisdictions elsewhere in the United States, civil-rights attorneys with expertise similar to Plaintiffs' attorneys are awarded rates in line with those requested in this petition. For example, in *Courthouse News Service*, a case involving First Amendment litigation, the Eastern District of Virginia awarded the partner on the case $730 per hour; the senior associate on the case, $590 per hour; the junior associate on the case $545 per hour; and the paralegal $290 per hour. *Id.* at 277, 279. It is appropriate for this Court to consider those rates as well, given the specialized nature of the litigation in this case. *See Jeffboat, LLC v. Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (concluding that where "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," then the relevant "community" may be all practitioners across the country); *See*

---

[1] Plaintiff recognizes that the rates in the court's Appendix B are in some cases somewhat below the rates he is requesting here (and below the rates recently awarded to BGL described in the text). However, not only is Appendix B not binding on the Court, but it does not reflect current market rates. *See* Appx. B, n. at 124 ("These rates are intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees . . . One factor that would support an adjustment to the applicable range is an increase in the cost of legal services since the adoption of the Guidelines."). That is because Appendix B was last updated in July 2014, almost a decade ago; there is no legitimate dispute that the cost of legal services has risen in the last seven years. See *Moratava v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2016 WL 6634856, at *3 n.2 (D. Md. Nov. 8, 2016).

*also, E. Associated Coal Corp. v. Dir., Off. of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013) ("In cases such as the present one, in which there is no lawful billing rate, the prevailing market rate should be determined with reference to the next best evidence, which includes, among other things, evidence of fee awards the attorney has received in similar cases.") (internal quotations omitted).[2]

### C.    The Rates Sought By Plaintiff's Counsel Are Reasonable and Justified

The rates sought by Plaintiff's counsel are justified by their individual and collective experience litigating civil rights cases, including wrongful conviction cases, discussed as follows.

### 1.    Jon Loevy (Columbia, 1993)

As corroborated by the trial results summarized in his attached declaration, Jon Loevy has established himself as one of the most successful trial lawyers in the United States. He has won jury verdicts of at least a million dollars at more than twenty (20) separate jury trials, nearly all in cases involving extremely challenging fact patterns. More than a dozen of his jury verdicts exceeded $5 million, and five separate times he was won jury verdicts of at least $20 million. Loevy's largest jury verdict was $100 million in Cook County, Illinois. See Exhibit A.

In addition to this case, Loevy's jury verdicts greater than one million dollars include:

---

[2] *See also Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of $500 for six years' experience); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving hourly rates of $358 for six years, $325 for five years); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case, approving hourly rates of $400 for five years); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First Amendment case approving hourly rates of $375 for seven years); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years).

*Rivera v. Guevara* in 2018 ($17 million jury verdict in wrongful conviction case); *Kuri v. Chicago* in 2018 ($4.1 million jury verdict in false arrest case for 3 years in jail); *Cook County v. USI* in 2018 ($9 million verdict against insurance broker); *Fields v. Chicago* in 2016 ($22 million jury verdict in wrongful conviction case); *Cook County v. AIG Insurance* in 2016 ($100mm jury verdict, one of the largest in Cook County history); *Jimenez v. Chicago* in 2012 ($25 million jury verdict for 14 years of wrongful imprisonment); *Newman v. Squire* in 2010 ($6 million for wrongful death); *Borsellino v. Putnam* in 2009 ($11 million for fraud by the former president of the NYSE); *Johnson v. Guevara* in 2009 ($21 million for 11 years of wrongful imprisonment); *White v. Lee's Summit* in 2008 ($16mm jury verdict in wrongful conviction case); *Duran v. Chicago* in 2008 ($4.2 million for interference with child custody); *Coffie v. Chicago* in 2007 ($4 million for police brutality); *Ware v. Chicago* in 2007 ($5 million for fatal police shooting); *Dominguez v. Waukegan* in 2006 ($9 million for 4 years of wrongful imprisonment); *Manning v. United States* in 2005 ($6.6 million against FBI agents for wrongful conviction); *Garcia v. Chicago* in 2003 ($1 million for excessive force); *Russell v. Chicago* in 2003 ($1.5 million for fatal police shooting); *Waits v. Chicago* in 2002 ($1.5 million for police brutality); and *Regalado v. Chicago* in 1999 ($28 million jury verdict for excessive force). *Id.*

Loevy is also an extremely accomplished appellate lawyer, having argued dozens of cases in the federal appellate courts. As the attached declaration attests, Loevy has enjoyed an uncommon level of success, often in challenging cases—as also demonstrated here. In difficult civil rights cases, he has won 18 of his last 21 arguments in federal courts of appeal. *Id.*

Loevy graduated from Columbia Law School in 1993, where he served as a Senior Editor of the Columbia Law Review. At Columbia, he was a Kent Scholar (approximately top 1% of the

9

academic class), as well as the recipient of the Young B. Smith Prize given to the student with the

top examination in torts, and the Paul R. Hayes Prize given to the student with the top exam in civil

procedure. After graduating from law school, Loevy clerked for Judge Milton I. Shadur of the

Northern District of Illinois for a year, and then spent a year and a half at Sidley & Austin before

leaving to start his own firm, Loevy & Loevy. *Id.*

His firm, Loevy & Loevy, is devoted to social justice and to representing those who might

otherwise have no voice. Loevy started the firm out of his basement apartment, first as a solo

practitioner, and then in partnership with his wife. It has since grown to nearly 50 lawyers with

offices across the United States. The firm focuses on a wide variety of civil rights issues, including

wrongful convictions, police shootings, excessive force, prisoner rights, the First Amendment,

freedom of information, electronic privacy, government fraud and whistleblower protection,

environmental justice, and other constitutional claims. It is the largest private civil rights firm

without paying clients in the country.

In addition, Loevy has been a Lecturer in Law and Trial Advocacy instructor at the

University of Chicago Law School in connection an exoneration clinic founded by his firm. Loevy

was previously named one of the Law Bulletin's prestigious "40 under 40" attorneys to watch in

Chicago, as well as one of Chicago Lawyer's "Next Generation Rising Stars of the Trial Bar."

In 2011, Loevy was awarded a Career Achievement award from the Chicago Law Bulletin, putting

him in the select group of what was then 11 attorneys in the history of the State of Illinois with at

least five jury verdicts in Illinois courts in excess of $5 million (Loevy now has 12 such verdicts).[3]

---

[3] Some of Loevy's accomplishments were summarized in a recent feature article. See
https://www.chicagomag.com/Chicago-Magazine/November-2018/Jon-Loevy/.

Courts have recognized Loevy's qualifications. In the oft-quoted words of one judge, for example, "Loevy [is] an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field." *Wells v. City of Chicago,* 925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013). Former Chief Judge of the Northern District of Illinois observed almost 20 years ago that Mr. Loevy is "an outstanding trial lawyer," whose trial skills have been deemed "reminiscent of the trial skills displayed by some of the nationally recognized trial lawyers in this community." *Garcia v. City of Chicago,* 2003 WL 22175620, at *2 (N.D. Ill. Sept. 19, 2003).

For these reasons, courts in the District where Mr. Loevy most frequently practices have long used him as a "benchmark" for the top hourly fee that a civil rights attorney can be awarded. Based on Mr. Loevy accomplishments and skills, when lawyers file fee petitions, courts often use his rate as the ceiling which no other rates can exceed. *See, e.g., Wells v. City of Chicago,* 925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013) (using Loevy's hourly rate as the ceiling below which other civil rights lawyers must be set because "With due respect to plaintiff's principal counsel in the present case, the Court does not believe that they merit hourly rates at or near the one the Court approved for Mr. Loevy"); *Adamik v. Motyka,* 12 C 3810, 2018 WL 3574751, at *3-*5 (N.D. Ill. July 25, 2018) (rate of highly accomplished attorney Ed Genson would be below Loevy's because Genson had not "attained the same level of recognition for civil rights work as Loevy," described as "well known in this district for having obtained a number of multi-million dollar jury verdicts in § 1983 cases ... the Court awards Genson the low end of the documented rates awarded to Loevy); *Duran v. Town of Cicero,* 2012 WL 1279903, at *20 (N.D. Ill. Apr. 16, 2012) (using Loevy's rate as the ceiling because he "clearly qualifies for an hourly rate as high as any other attorney handling

11

§ 1983 cases..."); *First Midwest Bank v. City of Chicago,* 337 F. Supp. 3d 749, 790 (N.D. Ill. 2018) (setting petitioner's rate at $100/hour less than Loevy, and noting "The *Fields* court took care to note that Mr. Loevy is "one of the top (if not the top) plaintiff's attorneys for police misconduct suits in Chicago.'"); *Johansen v. Wexford Health Sources,* 15-CV-2376, 2021 WL 1103349, at *4 (N.D. Ill. Mar. 23, 2021) (setting petitioner's hourly rate below Loevy's, who is described as a "top tier of civil rights trial attorney[ ]"); *Morjal v. City of Chicago,* Ill., 12 CV 185, 2013 WL 2368062, at *6 (N.D. Ill. May 29, 2013) ("the court does not find it reasonable for Ms. Hamilton to command the same rate Mr. Loevy was awarded until recently"); *Haywood v. Wexford Health Sources, Inc.,* 16 CV 3566, 2021 WL 2254968, at *12-13 (N.D. Ill. June 3, 2021) (using Loevy's rate as the ceiling where Loevy "leads one of the premier Chicago-area law firms concentrating in plaintiff's § 1983 litigation"); *Blackwell v. Kalinowski,* 2012 WL 469962, at *3 (N.D. Ill. Feb. 13, 2012) (using Loevy as the bench mark for the top rate, and describing Mr. Loevy's education, recognitions, and years of successful trial work); *Pouncy v. City of Chicago,* 15-CV-1840, 2017 WL 8205488, at *7 (N.D. Ill. Dec. 11, 2017) ("A 2013 decision from another court in this district awarded a more experienced attorney Jon Loevy $505 per hour," and declining to set any attorneys in the case as high or higher than Loevy); *Winston v. O'Brien,* 951 F. Supp. 2d 1004, 1007-08 (N.D. Ill. 2013) (also using Loevy's as the benchmark for what the top rate should be); *Montanez v. Fico,* 931 F. Supp. 2d 869, 876 (N.D. Ill. 2013) (same); *Martin v. City of Chicago,* 15-CV-04576, 2017 WL 4122738, at *5   (N.D. Ill. Sept. 18, 2017) (same); *Mouloki v. Epee,* 14 C 5532, 2017 WL 2791215, at *3 (N.D. Ill. June 27, 2017) (same); *In re Sw. Airlines Voucher Litig.,* 11 C 8176, 2013 WL 5497275, at *10 (N.D. Ill. Oct. 3, 2013) (same).

To be clear, Mr. Loevy was not personally involved in any of the cases cited in the prior

paragraph. Courts have nonetheless been performing fee analysis in other litigation taking it as a starting point that Loevy should set the standard for what the top rate should be.

In that light, Mr. Loevy is clearly entitled to the highest hourly rates in the field. His rate has not been formally adjudicated in nearly four years, when it was last set on January 1, 2018 at $550/hour. *Fields v. City of Chicago,* 2018 WL 253716, at *3 (N.D. Ill. Jan. 1, 2018). In the four years since that time, Loevy has won three more multi-million jury verdicts, exceeding $30mm. As discussed above, rates have also gone up, with very the very top litigators earning close to or more than $1000/hour. *See, e.g., City of Chicago v. Garland,* 2021 WL 1676387, *5-*6 (April 28, 2021) (awarding $1,565/hour, $1,435/hour, $1040/hour, $905/hour, and $895/hour in fee-shifting case to very well-credentialed attorneys), citing 18-cv-6859, R.99-2 (affidavit with rates awarded); *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving top hourly rates of $700-$975); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011) (prison disability discrimination case approving top hourly rates of $700-$800); *Guerrero v. California Department of Corrections*, 2016 WL 3360638, at *6-12 (N.D. Cal. 2016) (employment discrimination case approving top hourly rates of $753-$775); *Young v. Sarles*, 197 F. Supp. 3d 38, 45-52 (D.D.C. July 11, 2016) (section 1983 First Amendment case approving top hourly rates of $796); *Hunt v. Los Angeles*, No. 06 C 4691 (C.D. Cal. 2012) (Dkt. 214) (First Amendment case approving hourly rate of $750); *Cervantes v. Los Angeles*, 2016 WL 756456, at *2-3 (C.D. Cal. 2016) (section 1983 false arrest and excessive force case approving hourly rates of $700 for senior trial attorney); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case; approving top hourly rates of $725 and $750); *Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051-58 (C.D. Cal. 2014) (section 1983 First

13

Amendment case approving top hourly rates of $675-$775); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving top hourly rates of $710-$800); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1035 n.16 (C.D. Cal. 2012) (section 1983 jail class action approving top hourly rates of $850 and $825 to two senior attorneys); *Californians for Disability Rights v. California Dep't of Transp.*, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (disability access class action approving hourly rates up to $835 for 18+ years' experience); *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *8-10 (N.D. Cal. 2012) (employment discrimination case approving top hourly rates of $750); *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1103 (N.D.Cal. 2010) (employment discrimination case approving hourly rate of $700); *Restivo v. Nassau County*, 2015 WL 7734100, at *3 (E.D.N.Y. 2015) (section 1983 wrongful conviction case approving hourly rate of $700 for two senior trial attorneys); *Kovach v. CUNY*, 2015 WL 3540798, at *2-5 (S.D.N.Y. 2015) (disability discrimination case approving hourly rates of $700 for partner); *Valdivia v. Brown*, 848 F. Supp. 2d 1141, 1143 (E.D. Cal. 2011) (section 1983 prisoner due process class action approving hourly rate of up to $800 for senior attorney); *Bourke v. Beshear*, 2016 WL 164626, at *5-6 (W.D. Ky. 2016) (section 1983 marriage case approving hourly rates of $700-$750 for senior attorneys); *Reid v. Unilever U.S., Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *Courthouse News Serv*, 484 F. Supp. at 277, 279 (partner awarded $730 per hour);  *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (affirming award of $585 for lead counsel in).

A rate of $750 per hour is reasonable and appropriate for Jon Loevy's work, particularly in a case such as this one, where most of the time involved trial and appeal.

### 2.   Arthur Loevy (Michigan, 1963)

Arthur Loevy graduated from the University of Michigan Law School in 1963 and has been a member of the Illinois bar continuously for nearly 60 years. He began his legal career practicing labor law until 1970 when he became an elected officer of a trade union, the Amalgamated Clothing and Textile Workers Union ("ACTWU"). Mr. Loevy proceeded to serve in various elected capacities for trade unions, including International Executive Vice President of ACTWU, International Secretary-Treasurer of ACTWU, and, most recently International Secretary-Treasurer of the Union of Needle-Trades Industrial and Textile Employees (U.N.I.T.E.). See Exhibit B.

Mr. Loevy has also served as a Director and Vice Chairman of the Executive Committee of the Amalgamated Bank of New York (1990-98), the President, Chief Executive Officer, and Trustee of various Taft-Hartley insurance and trust funds for almost twenty years, the President of the Amalgamated Housing Foundation (1974-98), and the President of the Sidney Hillman Health Center in Chicago (1980-98). Since January 1, 1997, Mr. Loevy resumed the practice of law on a full-time basis. In 1998, he joined the law firm started by his son, Jon Loevy, and has practiced there ever since.

In that capacity, Mr. Loevy has been instrumental in the firm's success. In this case, for example, he prepared for and took the most important deposition in the case, Defendant Officer Goldstein. As apparent from the amount of impeachment during cross-examination, the deposition contributed substantially to the result at trial.

Mr. Loevy seeks compensation for less than 40 hours total in the six years of litigation, some of which involved his attempts to negotiate a resolution. With his half-century-plus of experience and accomplishments, he merits an award at the top of the scale. His rate has not been

adjudicated since 2018. *See Awalt v. Marketti,* 2018 WL 2332072 (N.D. Ill. May 23, 2018) (awarding $550/hour for limited role). Plaintiff respectfully submits that his work in this case merits a rate of $850/hour.

### 3. Gayle Horn (NYU, 2004)

Gayle Horn is a partner at Loevy & Loevy with 17 years' experience. She seeks an hourly rate of $575/hour. Ms. Horn worked on all aspects of the case, from pre-filing investigation to trial to the final, successful appeal. She was the leader of the litigation team, was primarily responsible for all pretrial litigation, including oral and written discovery and motion practice, and she was responsible for case strategy at all stages of the case. She was a principal trial attorney. Given that Plaintiff's successful result would have been impossible without Ms. Horn's tireless work on the case, her proposed hourly rate of $575/hour is amply justified. See Exhibit C.

In addition to being in line with the rate recommended by the *Laffey* Matrix, Ms. Horn's proposed hourly rate is directly in line with the rates award or paid to comparable attorneys in this jurisdiction. Ex. J (*Laffey* Matrix, providing rate of $591/hour for an attorney with 16 to 20 years of experience). For example, as noted above, Andy Freeman has declared that his law firm, which also specializes in civil rights, would charge its clients between $550 and $625 per hour. Moreover, it is below rates routinely awarded to attorneys with far fewer years of relevant experience. *Garland,* 2021 WL 1676387, at \*5-\*6 (awarding $815/hour to 7th year lawyer, $775/hour to 6th year lawyer, 620/hour to two 5th year lawyers), citing 18-cv-6859, R.99-2 (affidavit ¶¶ 11-14) ; *Reid v. Unilever U.S., Inc.*, 2015 WL 3653318 (N.D. Ill. June 10, 2015) ($558 per hour to class action attorney with 10 years' experience); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 783 F. Supp. 2d 1031, 1037 (N.D. Ill. 2011) ($500-750 to multiple lawyers in ERISA case); *Courthouse News Serv*, 484 F.

Supp. 3d at 277 (senior associate awarded $590 per hour).

Ms. Horn's experience and past successes also demonstrate that an hourly rate of $575/hour is justified. Following law school, where she earned both her J.D. and L.L.M. as an International Institute of Justice Fellow, Ms. Horn spent a year clerking for the Honorable Milton Shadur in the Northern District of Illinois. Since joining Loevy & Loevy in 2006, Ms. Horn has served as trial counsel in a number of successful verdicts, including as lead trial counsel in a wrongful conviction case in Milwaukee, *Stinson v. City of Milwaukee*, No. 09 C 1033 (E.D. Wis.) and in a malicious prosecution case, *Winfrey v. Johnson*, No. 10-1896 (S.D. Tex.). In *Stinson*, the case settled for more than $7 million on the eve of closing arguments; and in *Winfrey*, the jury returned a verdict of $1 million for two plaintiffs who had been wrongfully prosecuted and jailed awaiting trial. Ex. C (Horn Decl.) ¶ 4.

Ms. Horn has also been involved in a number of significant settlements on behalf of clients wrongfully convicted, including as lead counsel in the settlement of *Johnson v. City of Rockford*, No. 15 CV 50064 (N.D. Ill), which involved the wrongful conviction of three men for a murder they did not commit and which settled for $11 million pretrial; *Kluppelberg v. Burge*, No. 13 CV 3963 (N.D. Ill.), which involved the more-than-two-decade wrongful conviction of an individual and which settled for over $9 million just prior to trial; *Small v. City of Wilmington*, No. 17 CV 00071 (E.D.N.C.), which involved the wrongful conviction of a juvenile and settled for over $7 million; *Ott v. City of Milwaukee*, No. 09 CV 870-RTR (E.D. Wis.), which involved a 13-year wrongful conviction and which settled for $6.5 million; and *Patterson v. City of Chicago*, No. 11 CV 7052 (N.D. Ill.), which involved the wrongful conviction of an individual and subsequent seven-year incarceration, and which settled pre-trial for $4.2 million. Ex. C (Horn Decl.) ¶ 4

In addition to work in the district court, Ms. Horn has also litigated numerous appeals before the Courts of Appeals, including briefing and argument in appeals that have established important and often-cited legal principles, including about the pleading standards for *Monell* litigation (*Haley v. City of Boston*, No. 10-2064 (1st Cir)); the standard for the applicability of qualified immunity and the availability of a claim for the destruction of evidence (*Armstrong v. Daily*, No. 13-3423, 13-3482 (7th Cir.)); and the existence of a *Bivens* remedy in police misconduct cases (*Engel v. Buchan,* No. 11–1734 (7th Cir.)). Ex. C (Horn Decl.) ¶ 5.

Finally, in addition to the above-described work, Ms. Horn has been active in helping individuals wrongfully convicted of crimes secure their freedom. Some notable victories on that front include: James Kluppelberg, who was exonerated after spending more than two decades in prison for a crime he did not commit; Tyrone Hood, who was released from more than two-decades of custody after the Governor granted clemency and the State dismissed all charges against him; Robert Britton, who was acquitted after a retrial (at which Ms. Horn was lead counsel), but not before spending 19 years in prison; Anthony Ross and Lumont Johnson, who were exonerated after a post-conviction hearing and subsequent retrial, of a murder they did not commit; Rodell Sanders, who was exonerated after decades in prison and two retrials; and Kehinda Mitchell, who was also exonerated after serving 15 years in prison for a murder. Ex. C (Horn Decl.) ¶ 6.

Given the foregoing experience and success of Ms. Horn, a rate of $575 per hour is justified.

18

4.     **Steve Art** (Northwestern, 2009)

Steve Art is a partner at Loevy & Loevy. He graduated *magna cum laude* from Northwestern University School of Law in 2009. He then served for two terms as a law clerk to Chief Judge Diane P. Wood of the Seventh Circuit, after which he joined Loevy & Loevy.

In this case, Mr. Art was responsible for all aspects of the litigation before and after the trial, participating in motion practice at all stages of the case, including motions to dismiss, during discovery, at summary judgment, before trial, post-trial motions, and both appeals. In addition, Mr. Art conducted a substantial amount of fact and expert discovery, including numerous depositions, investigation and witness development, and document discovery; he handled day-to-day conferences with opposing counsel and court hearings; and he helped coordinate the litigation team with Mr. Loevy and Ms. Horn. Throughout, Mr. Art assisted in developing factual theories, legal arguments, and Plaintiff's litigation strategy at all stages of the case.

Mr. Art seeks a rate of $525 per hour. That rate is in line with the rate recommend by the *Laffey* matrix. Ex. J (*Laffey* Matrix, identifying rate of $532/hour for an attorney with 11-15 years of experience). Like Ms. Horn, it is also comparable to rates awarded or paid to comparable attorneys in this jurisdiction, Ex. I (Freeman Decl.) ¶ 10 (charges $525/hour for 2010 graduate), and in other jurisdictions, *Rodriguez v. Los Angeles*, 96 F. Supp. 3d 1012, 1022-23 (C.D. Cal. 2014) (section 1983 excessive force case approving hourly rates of $500 for six years' experience); *Multi-Ethnic Immigrant Workers v. Los Angeles*, 2009 WL 9100391, at *6 (C.D. Cal. June 24, 2009) (section 1983 First and Fourth Amendment class action approving hourly rates of $425 for eight years' experience). Finally, it is in line with Art's past adjudicated rates, adjusted for inflation and increased skill and experience. *See* Ex. D (Art Decl.) ¶¶ 11 & 12.

19

Art's requested rate is also justified by his considerable skill, experience, and achievements, set forth in more detail in his declaration. Ex. D (Art Decl.). In his time practicing at Loevy & Loevy, Art has become an experienced trial and appellate litigator who has achieved substantial successes for his clients. Art has been a trial court litigator in *Rivera v. Guevara*, a wrongful conviction case that resulted in a $17+ million jury verdict for the plaintiff; *Fields v. City of Chicago*, a wrongful conviction case that resulted in a $22+ million jury verdict for the plaintiff; *Rivera v. Lake County*, a wrongful conviction case that settled before trial for $20 million, one of the largest pretrial settlements of a wrongful conviction case ever; *Fox v. Barnes*, a prison denial of medical care case that resulted in a $12 million verdict; *Awalt v. CHC*, a jail denial of medical care case that resulted in a multi-million dollar settlement; and *Julian v. Hanna*, a wrongful conviction case that settled before trial for $3 million. *See* Ex. D (Art Decl.) ¶ 7.

In addition, Art has been responsible for writing briefs and/or presenting oral argument in more than a dozen civil rights appeals that resulted in victories for civil rights plaintiffs, with many establishing important new legal principles. Recently, Art briefed and argued the wrongful conviction case of Johnnie Lee Savory in the Seventh Circuit, securing an en banc reversal of the district court's dismissal of that case as untimely. *Savory*, 947 F.3d 409. *See* Ex. D (Art Decl.) ¶ 8.

Art also spends significant time in service to the community. He is a member of the board of the Chicago Council of Lawyers, a public interest bar association committed to social and criminal justice reforms. He is a past president of the board of directors of Chicago Appleseed Fund for Justice, a leading nonpartisan organization promoting systemic reform of courts, and he is a member and former chair of the Criminal Justice Advisory Committee of the Collaboration for Justice, a joint project of Appleseed and the Chicago Council of Lawyers. Art was awarded the Young

Alumni Public Service Award by Northwestern University School of Law in 2016 in recognition of this and other work. Given his qualifications, experience, and work on all stages of the trial-court litigation and appeals in this cases, a rate of $525 per hour is justified for Steve Art. *Courthouse News Serv. v. Schaefer*, 484 F. Supp. 3d 273, 277 (E.D. Va. 2020) (partner awarded $730 per hour, senior associate awarded $590 per hour, junior associated awarded $545 per hour, paralegal awarded $290 per hour);  *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (affirming award of $585 for lead counsel in 2014 and $365 for senior associate in 2014).

     **5.**     **Theresa Kleinhaus** (DePaul University College of Law, 2010)

Theresa Kleinhaus graduated from law school in 2010 *magna cum laude* and Order of the Coif. Since graduating law school, Kleinhaus has dedicated her practice to representing the least powerful members of society, including criminal defendants and civil rights plaintiffs. Kleinhaus served as counsel in ten trials or evidentiary hearings prior to the *Burgess* matter. *See, e.g., Hardy v. City of Milwaukee,* Case No. 2:13-cv-00769-JPS, (verdict of $506,000 to Mr. Hardy for improper strip searches by Milwaukee police); *Jondalyn Fields v. Ramos*, Case No. 09-L-002962 (Cook County, IL) ($2.75 million verdict in a wrongful death action as a result of an improper police pursuit). Kleinhaus has been co-lead counsel in several "mass actions" on behalf of civil rights plaintiffs. *See, e.g., Ashford v. City of Milwaukee,* 13-c-0771 (E.D. Wis.) ($5 million settlement for 74 men who were publicly strip or body-cavity searched). Kleinhaus has also successfully settled cases on behalf of civilians (including prisoners) who were sexually assaulted because of law enforcement misconduct. *See e.g., Lemons v. City of Milwaukee,* Case No. 13-0331-CNC (E.D. Wis.) ($2.5 million settlement on behalf of a woman sexually assaulted by an on-duty police officer); *Miller v. Thomas,* 4:17-cv-180, (N.D. Ala.) and coordinated proceedings ($595,000

settlement on behalf of prisoners who were sexually assaulted while in state custody). See Ex. E (Kleinhaus Decl.).

Kleinhaus also routinely represents clients for whom monetary recovery is limited or nonexistent in order to obtain their freedom or effect policy change. After Kleinhaus brought numerous suits against Milwaukee County challenging the practice of shackling women prisoners during childbirth, the County abandoned the policy.[4] Kleinhaus also represents wrongfully convicted prisoners *pro bono* in Illinois state courts in post-conviction proceedings.

In this case, Kleinhaus was responsible for witness investigation and preparation, depositions (including Defendant depositions and the deposition of key eyewitness Brian Rainey), written discovery, thousands of pages of document review, developing case strategy, and trial (during which she presented witnesses and argued jury instructions as well as helped Mr. Loevy prepare for his own examinations).

Given Ms. Kleinhaus's qualifications and experience, an hourly rate of $500 is justified. *Garland,* 2021 WL 1676387, at *5-*6 (awarding $815/hour to 7th year lawyer, $775/hour to 6th year lawyer, 620/hour to two 5th year lawyers), citing 18-cv-6859, R.99-2 (affidavit ¶¶ 11-14); *Dixon v. Oakland*, 2014 WL 6951260, at *7-10 (N.D. Cal. 2014) (section 1983 false arrest and excessive force case, approving hourly rates of $400 for five years experience); *In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.*, 2016 WL 4765679 (N.D. Ill. Sep. 13, 2016) ($425 to class action attorneys with 10 years' experience); *Courthouse News Serv. v.*

---

[4] *Martin v. County of Milwaukee*, Case No. 14-cv-200 (E.D. Wis.), *Terry v. County of Milwaukee*, Case No. 2:17-cv-01112 (E.D. Wis.), *Robles v. County of Milwaukee*, Case No. 18-1328 (E.D. Wis.), *Hall v. County of Milwaukee*, Case No. 17-cv-379 (E.D. Wis.).

*Schaefer*, 484 F. Supp. 3d at 277 (senior associate awarded $590 per hour); *McAfee*, 738 F.3d at 91 (affirming award of $365 for senior associate in 2014).

  **6.**  **Danielle Hamilton** (Harvard, 2012)

  Danielle Hamilton joined Loevy & Loevy in 2017. Ms. Hamilton graduated from Harvard Law School in 2012, where she received awards for academic distinction, including the Dean's Scholar prize in First Year Legal Research and Writing. She also served as Executive Editor of the Harvard Journal of Racial and Ethnic Justice and won a Dean's Scholar Prize for First-Year Legal Research and Writing. Ex. F (Hamilton Decl.) ¶ 2.

  Prior to joining Loevy & Loevy, Ms. Hamilton worked as a fellow at Neufield, Scheck & Brustin (NSB). While at NSB, Ms. Hamilton litigated all aspects of Section 1983, civil rights litigation, including written and oral discovery, pretrial motions, trial and appeals. Ex. F (Hamilton Decl.) ¶¶ 3-4. Among her notable victories, was her participation in a wrongful conviction trial, which resulted in a $16 million verdict. *Id*. ¶ 4. In 2016, Ms. Hamilton left NSB to clerk on the Second Circuit Court of Appeals for Judge Barrington D. Parker. *Id*.

  Since she joined Loevy & Loevy, Ms. Hamilton has been active in all aspects of discovery and trial and has been on trial teams in both *Fields v. City of Chicago*, No. 10-cv-1168 (N.D. Ill.), which resulted in a $22 million verdict for a man wrongfully convicted of murder; and *Kuri v. City of Chicago*, No. 13-cv-1653 (N.D. Ill.), which resulted in a $4 million verdict for a man who was maliciously prosecuted for murder.

  In this litigation, Ms. Hamilton assisted with pretrial motions *in limine* and *Daubert* motions. Ex. F (Hamilton Decl.) ¶ 7.

  With nearly 10 years of experience, the hourly rate of $410 requested for Ms. Hamilton is

less than that awarded in this Circuit to a senior associate, and even less than what was awarded to a junior associate in *Courthouse News Service*, 484 F.Supp.3d at 277, 279 (awarding $590 to a senior associate and $545 to a junior associate). Indeed, Ms. Hamilton's proposed rate of $410 is what the civil rights firm, Brown, Goldstein & Levy would charge for an associate at their firm with comparable qualifications.

**7.    Tony Balkissoon** (Harvard, 2010)

Tony Balkissoon graduated *cum laude* from Harvard Law School in 2010. He then litigated intellectual property cases at Sidley Austin, where in his final year his time was billed to his clients at $615/hour. Ex. G (Balkissoon Decl.) ¶ 6. Balkissoon gained litigation experience faster than the typical Sidley associate, including helping to secure a $14 million federal jury verdict for an intellectual property plaintiff. Balkissoon also has significant appellate experience, having briefed cases in the Federal, Sixth, and Seventh Circuit Courts of Appeals. Before joining Loevy & Loevy in October 2016, Balkissoon gained additional invaluable experience and insight into federal court litigation, clerking for Judge Manish S. Shah of the Northern District of Illinois, and then Judge Ann Claire Williams of the Seventh Circuit.

After leaving Loevy & Loevy in March 2019, Mr. Balkissoon litigated appeals as an attorney at the Roderick and Solange MacArthur Justice Center's Supreme Court and Appellate Practice, and is currently the Vice President and Executive Counsel at the John Jay College of Criminal Justice, part of the City University of New York. Ex. G (Balkissoon Decl.) ¶ 10.

In this case, Mr. Balkissoon was heavily involved in all aspects of the litigation, including discovery requests, taking and defending depositions, motion practice and retaining and working with experts. In addition, at trial, Mr. Balkissoon only assisted with the preparation of witnesses and

the strategy of the case, but also put on Gun Shot Residue expert John Kilty. Following the trial, Mr. Balkissoon helped with the post-trial and appellate briefing.

Based on the all of the case law set forth above, a rate of $500/hour for an attorney with his qualifications and more than a decade of legal experience is appropriate and reasonable.

**8.      Sarah Grusin** (Yale, 2014)

Sarah Grusin joined Loevy & Loevy in 2015. Grusin graduated from Yale Law School in 2014, where she was a recipient of the Benjamin Scharps Prize, which is awarded to the best paper written by a third-year student, and the C. LaRue Munson Prize, awarded for excellence in the investigation, preparation, and presentation of civil, criminal, or administrative law cases. Grusin has published on eyewitness identifications, *A Recognition Intentionally Evoked: Extending* Daubert *to Eyewitness Identifications*, 51 Willamette L. Rev. 1 (2014); and on section 1983 litigation, *Holding Health Insurance Exchanges Accountable*, 24 Annals of Health Law 337 (2015).

Following law school, Ms. Grusin served as a law clerk for Judge Pallmeyer of the U.S. District Court for Northern District of Illinois. Ex. H (Grusin Decl.) ¶ 5. In this case, Ms. Grusin was involved in the pretrial litigation, including written and oral discovery, motion practice, taking and defending depositions and working with expert witnesses.

The hourly rate of $410 requested for Grusin is consistent with the rates recommended by *Laffey* Matrix. Ex. J (*Laffey* Matrix). Moreover, it is less than that awarded in this Circuit to a junior associate in *Courthouse News Service*, 484 F.Supp.3d at 277, 279. Indeed, Ms.. Grusin's proposed rate $410/hour is what the civil rights firm, Brown, Goldstein & Levy would charge for an associate at their firm with comparable qualifications.

### 9.    Loevy & Loevy Paralegals

Plaintiffs' lodestar includes the work of paralegals at Loevy & Loevy, who were an integral

part of the litigation, trial, and appellate team, reducing higher-billing attorney time, and thereby

increasing efficiency. Paralegal's fees are recoverable at market rates as well. *Richlin Sec. Service*

*Co. v. Chertoff*, 553 U.S. 571, 580 (2008); *see also Parish v. City of Elkhart*, 2011 WL 1360810, at

*2 (N.D. Ind. Apr. 11, 2011) (approving investigator billing at the hourly rate for paralegals). As set

forth in Group Exhibit K-P to this petition, the paralegals working on this case have exceptional

experience and qualifications. Plaintiff's attorneys' seek an hourly rate of $150 for their paralegals'

work. That rate is below that set out in the *Laffey* Matrix, *see* Ex. J, and it is below normal market

rates for paralegals, *see* Ex. I (Freeman Decl.) ¶ 10 (charging $200 to $265 per hour for paralegal

time); *Courthouse News Servc.*, 484 F. Supp. 3d at 277, 279 (charging $290 per hour for paralegal

time); *Webb v. CBS Broadcasting, Inc.*, 2011 WL 4501366, at *3, 8 (N.D. Ill. Sep. 28, 2011) ($190

per hour); *Johnson v. Board of Educ.*, 2011 WL 21160944 (C.D. Ill. June 1, 2011) ($160-190 per

hour). Similarly, and for the same reasons, Plaintiff is seeking a rate of $160 per hour for his

investigator, Mort Smith, who has over 30 years of experience investigating civil and criminal

cases. Ex. M (Smith Decl.).

### D.    The Rates Awarded Must Reflect Market Increases In Legal Fees and The Time Value of Money

In evaluating judicial opinions awarding fees in prior cases, it is important to consider the

age of the prior case. The market for legal fees is subject to inflation, warranting upward adjustment

of hourly rates awarded in older cases. For example, the National Law Journal annual billing survey

found an inflationary increase in legal fees of 2.5% in 2009, 2.7% in 2010, and 4.4% in 2011. See

Ex. N (NLJ 2011 Law Firm Billing Survey) (noting also that annual inflationary increases of 6% to

26

8% were common before 2009). And data from the U.S. Bureau of Labor Statistics shows an inflationary increase in legal fees of 26.2% between January 2012 and January 2020, with a 4.2% increase in 2019 alone. See Ex. O (U.S Bureau of Labor Statistics Producer Price Index - Office of Lawyers Data); Ex. J (*Laffey* Matrix, https://www.justice.gov/usao-dc/page/file/1189846/download), Notes 2-3. This means that an hourly rate of $500 awarded to an attorney with *x* years' experience in 2008 justified a rate of $550 for an attorney with *x* years' experience in 2011, accounting solely for inflation. By January 2020, the rate for an attorney with the *x* years' experience adjusted for inflation would be nearly $700.[5]

Additionally, there is the fact that Plaintiff's counsel deferred their compensation for years. To compensate for the time value of money, courts routinely hold that Plaintiff's attorneys should be compensated at current market rates, and not at the rates that prevailed at the time that services were rendered. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989); *Johannssen v. Dist. No. 1-P. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 180 (4th Cir. 2002); *see also Reaching Hearts Intern., Inc. v. Prince George's County*, No. 11-1399, 478 Fed. Appx. 54, 60–61 (4th Cir. 2012)(unpublished); *Spencer v. C. Services, LLC*, CIV. CCB-10-03469, 2012 WL 142978, at *4 (D. Md. Jan. 13, 2012).

## II.   THE HOURS BILLED ON THIS LITIGATION WERE REASONABLE

The hours billed by Plaintiff's counsel are documented on the time sheets submitted as Exhibit L. Given the complexity, duration, and contested nature of the case, as well as the

---

[5] Courts have used the Legal Services Index to adjust the *Laffey* Matrix to reflect current rates - *Interfaith Community Organization v. Honeywell Intern., Inc.*, 726 F.3d 403, 415 (3d Cir. 2014); also commented on approvingly in *Sullivan v. Sullivan*, 958 F.2d 574, 577-78 (4th Cir. 1992) (describing the LSI as reflecting "prevailing market rates")

outstanding result ultimately obtained, Plaintiff's hours are reasonable and they should be approved.

It is important to make clear that Plaintiffs' attorneys understand they were required to exercise "billing judgment" in deciding what hours to submit to the Court in a fee petition, and they have spent time to make sure their time records were appropriate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, at 552-53 (7th Cir. 1999). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* Plaintiffs' attorneys submit that their timesheets include only the core activities necessary to effectively prosecute the case, and not extraneous hours that would have been "excessive, redundant, or otherwise unnecessary" to the result in this case. *Hensley*, 461 U.S. at 434.

Plaintiff also notes that while it sometimes makes sense to limit counsel to one attorney per hearing or task, the defense attorneys in this case followed that standard. Where the defense paid for the luxury of multiple attorneys at every stage of the litigation, they cannot begrudge Plaintiff's counsel the same.

## III.    AN UPWARD DEPARTURE FROM THE LODESTAR IS WARRANTED IN THIS CASE

The Supreme Court has instructed that, after the lodestar is calculated, a fee awarded should be adjusted upward or downward to account for the results obtained in a given case. *Hensley*, 461 U.S. at 434. For example, if Plaintiff's prosecution of this case had required all of the same skill and labor but had resulted in a case at trial and jury verdict in the neighborhood of $4-5 million, the Defendants might be justified in arguing that Plaintiff's counsel should get their lodestar with no upward departure. If the case had resulted in a mid-six-figure verdict similar to the settlement offers made by the Defendants along the way, then the Defendants might be justified in arguing that a downward departure from the lodestar would be warranted.

28

But in a truly rare case like this one, where Plaintiff achieved a record-setting verdict in complex a civil rights matter that presented difficult factual and legal questions and that was defended by among the most venerable defense counsel available, the extraordinary and unprecedented success obtained by Mr. Burgess justifies an upward adjustment upward. *See Perdue v. Kenny A ex. rel. Winn*, 559 U.S. 542, 554-56 (2010). To that end, Plaintiff's counsel proposes a 20% upward adjustment, commensurate with the degree of success obtained for their client.

## IV.    PLAINTIFF'S COUNSELS' COSTS ARE REASONABLE

In their six-year struggle to vindicate Mr. Burgess' rights, his attorneys spent substantial sums of money out of pocket on the costs of the case. In particular, Loevy & Loevy spent $180,292.08 in costs. Ex. P. Plaintiff seeks to recover these costs under federal statutes and rules, including 42 U.S.C. § 1988, 28 U.S.C. §§ 1920 & 1924, and Federal Rule of Civil Procedure 54. Spreadsheets listing each cost reasonably expended in this case are being submitted along with this petition as Exhibit P.[6]

**CONCLUSION**

Plaintiff respectfully requests the Court enter judgment on Plaintiff's attorneys' motion for attorneys' fees and costs as follows: $3,384,801.25 in fees and $180,292.08 in costs.

---

[6] In addition, Plaintiff has receipts for each of the listed charges and will file those for *in camera* review. Should this Court wish, Plaintiff will also file those records publicly. The receipts are in the same order that the costs appear on the spreadsheets.

RESPECTFULLY SUBMITTED,

/s/ Jon Loevy

Jon Loevy, admitted *pro hac vice*
Gayle Horn, Bar No. 7182
Steve Art, admitted *pro hac vice*
Theresa Kleinhaus, admitted *pro hac vice*
LOEVY & LOEVY
311 North Aberdeen Chicago,
Illinois 60607
(312) 243-5900

*Attorneys for Plaintiff Sabein Burgess*

## CERTIFICATE OF SERVICE

I, Jon Loevy, an attorney, hereby certify that on October 29, 2021, I filed the foregoing

document using the Court's CM/ECF system, which effected service on all counsel of record.

RESPECTFULLY SUBMITTED,

/s/ Jon Loevy
*One of Plaintiff's Attorneys*

30